UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DAVID MAYO,

                        **Plaintiff,**

v.                                                   Civil Action No.: 4:13cv78

**CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,**

           **Defendant.**

## OPINION AND ORDER

This matter comes before the Court on Plaintiff David Mayo's ("Plaintiff" or "Mayo") Objections to the Report and Recommendation of the United States Magistrate Judge ("Magistrate Judge"). Doc. 14. For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** the Magistrate Judge's Report & Recommendation ("R&R"). Doc. 13.

### I. BACKGROUND

Plaintiff does not object to the recitation of the procedural or factual background of this case contained in the R&R, which sets forth, inter alia, the following facts.

*A. Procedural History*

Plaintiff filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") with the Social Security Administration ("SSA") on September 21, 2010, alleging a disability onset date of November 21, 2008. R&R 2, 6. The application alleged that Plaintiff suffered from chronic back and knee pain. Id. at 6. Plaintiff's application was

1

denied initially, as well as upon reconsideration.[1] Id. at 2. Mayo then requested an administrative hearing, which was conducted on May 7, 2012. Id.; see also R. 28. At this hearing, an Administrative Law Judge ("ALJ") heard testimony from Mayo and Vocational Expert ("VE") Linda Augins. R. 28–52. During the hearing, Plaintiff amended his alleged onset date to July 1, 2010. R. 31. On May 15, 2012, the ALJ denied Plaintiff's DIB and SSI claims. R&R at 2. The ALJ's decision became the Commissioner's final decision on April 10, 2013, when the Appeals Council denied Plaintiff's request for review of this decision. Id.

On June 10, 2013, having exhausted his administrative remedies, Plaintiff filed the instant action, seeking judicial review of the Commissioner's final decision. Id. The parties filed cross motions for summary judgment, which were addressed by the R&R, filed on April 24, 2014. Doc. 13. Plaintiff filed his Objections to the R&R on May 9, 2014. Doc. 14. Defendant filed her Response on May 22, 2014. Doc. 15. This case is now before the Court for disposition of the R&R.

B. *Factual Background*

At the time of his application, Plaintiff was a forty-nine year old man with a high school education who previously worked as a maritime electrician and substance abuse counselor. R&R at 6, see also R. 47–48. Plaintiff's application for benefits alleges disabilities resulting from chronic back and knee pain.[2] R&R at 6.

---

[1] Mayo's initial application was denied on February 8, 2011. R&R at 2. Mayo's request for reconsideration was denied on August 3, 2011. Id.

[2] There were also references to mental limitations such as loss of concentration and depression, but the medical records and testimony were sparse or non-existent on this topic. To the extent they exist, it appears from the record they are a byproduct of the chronic back and knee pain, and the associated limitations Plaintiff faces because of these physical conditions. See, e.g., R. 401 (containing a notation from a physical therapist that Plaintiff suffers from depression).

i. Medical records

Plaintiff's problems with his knee and back began in 1991 after he fell down the stairs; however, no records concerning treatment for this injury were provided, and the only evidence concerning this injury was what Plaintiff reported to physicians seeking treatment for later complaints of pain. R. 273, 343, 363. There are also references to another major injury in 2001, but again no records were provided concerning this injury either. R. 365.

The first record shows treatment for back and leg pain in October 2002. R. 305–6. At that time, Plaintiff reported to seeing Dr. Robert Snyder for back pain since March 2002 and that he was receiving steroid shots. R. 312. After that, the next record shows a MRI was performed in June 2007, revealing a L4 disc desiccation and a left neuroforaminal focal disc protrusion encroaching the L4 nerve root, resulting in mild spinal canal stenosis. R&R at 8, see also R. 242. Another MRI was performed in August 2007, showing "[m]ild degenerative changes in the cervical spine without spinal stenosis or neural foraminal narrowing."[3] R. 271. It was reported that Mayo did not explain his symptoms very well and that he was filing for disability and wanted a note saying he could not work. R. 273. Plaintiff received an epidural steroid injection ("ESI") in September 2007, and Mayo reported reduced pain following the procedure. R. 269.

There are no records for 2008. In January 2009, he was admitted to the emergency room ("E.R.") of Riverside Regional ("Riverside") complaining of back pain and headache.[4] R&R at 8, see also R. 244–48. Plaintiff reported a pain level of 8 out of 10, and it was observed that Plaintiff had no scoliosis, but did have paraspinal tenderness. R. 247. It was also reported that Plaintiff arrived "ambulatory with steady gait ... appears comfortable ... is alert and oriented x 3

---

[3] At this time, Mayo reported having had physical therapy, steroid injections, and a "rhizotomy," all without effect. However, his physician reported having no documentation concerning these treatments. R. 273.
[4] While the R&R reported that Mayo "walked" to the E.R., it appears that that is a code used by Riverside; the medical records reflect that Mayo was driven by a friend or family member. R. 247.

[and] appears in no acute distress[.]" Id. He reported chronic back pain which had gotten worse in the past few days. Id. Mayo was discharged with prescriptions for Valium and Medrol Dosepak. R. 246. However, Plaintiff did not fill his prescription for Medrol Dosepak. R. 250.

Plaintiff sought follow-up care in February. R. 250. Following-up again in May 2009, he reported his pain never went below 7 out of 10, and he was prescribed cyclobenzaprine, acetaminophen, and hydrocodone. R. 251–52. At this examination, he was observed to have the ability to "stand and ambulate with a normal gait without difficult." R. 267.

In June 2009, Plaintiff's physician informed him he was not a good candidate for back surgery, given "the relatively mild findings on his MRI," which revealed "degenerative changes in the L4–5 disk with a small lateral disk protrusion on the left consistent with his symptoms."[5] R. 260. An ESI was performed at this time, and Plaintiff reported immediate relief, but which lasted only for a few days. R. 259–63. An additional ESI was performed in July 2009, but Plaintiff reported no pain relief at that time. R. 258–59.

In January 2010, Plaintiff reported again to the Riverside E.R., complaining of flu-like symptoms and back pain. R. 282. He reported a pain level of 9 out of 10. Id. However, it was observed that he had a "steady gait" and was not in acute distress. R. 285. He was also observed to be "well-groomed." Id. He was told to follow-up with his primary care physician for management of chronic pain. R. 286.

Plaintiff again sought treatment at Riverside E.R. in July 2010, reporting pain, nausea, and a headache. R. 331. It was noted that he was not taking the medication for his pain. Id. It was also observed that he had "a steady gait" and "appears in no acute distress." Id. Again, he was told that "[t]he emergency department cannot treat chronic pain." R. 332.

---

[5] A more detailed description of the MRI's findings can be found in the Record. R. 264–5.

In January 2011, Dr. Seth Tuwiner examined Plaintiff. R. 292. He reported that Plaintiff had pain in his back, shooting through his leg. Id. He reported that Plaintiff injured his ACL and MCL in the early 2000s, and had corrective surgery. R. 293. Plaintiff was unable to toe or heel walk. R. 294. Dr. Tuwiner reported three diagnoses: lumbosacral radiculopathy, thoracic pain, and left knee injury. Id. Dr. Tuwiner also noted that Mayo could be expected to stand and walk approximately 4 hours in an 8-hour day. Id. He reported no limitations regarding his ability to sit, nor did Mayo require the use of an assistive device. Id. Dr. Tuwiner did note that Mayo had "frequent postural limitations with bending, stooping and crouching." Id. Dr. Tuwiner also observed that Mayo could lift 20 pounds occasionally and 10 pounds frequently. R. 295.

In June 2011, Plaintiff again reported to the Riverside E.R. for treatment of back pain, reporting a pain level of 10 out of 10. R. 341. He was observed to "appear[] comfortable and was able to "ambulate normally." R. 343. However, Mayo advised that "he cannot walk due to pain" and arrived to the treating area in a wheelchair. Id. He was prescribed Percocet and Flexeril. R. 344.

The next month, Plaintiff reported once again to the Riverside E.R. for more treatment. R. 352. It was noted that he had a "fall several weeks ago" and that Plaintiff had "[m]ore than one recent ED visit for this complaint." Id. In addition to his pain report of a 10 out of 10, he again reported vomiting and nausea. Id. He was observed to be "uncomfortable" and that he was "moving w/ minimal difficulty but states pain is unbearable." R. 353. It was again explained that "the ER is not the place for pain management" and because he had "good results with epidurals ... that is even more of a reason to get back into pain management." Id. He was discharged with prescriptions for Vicodin and Flexeril. R. 361.

5

In August and September 2011, Mayo reported to the Community Free Clinic. R&R at 10, see also R. 302–3. He requested paperwork for his disability case. R. 302. He also reported being depressed. Id. However, in September, he declined an examination, and was referred to the Community Services Board ("CSB") for his depression. Id.

In November 2011, Plaintiff again reported to the Riverside E.R. R. 363. He reported a pain level of 10 in his back as well as numbness in his back. Id. He was instructed that the E.R. could not treat his pain, and that "he will most likely need [physical therapy] and further out patient consultation." R. 364. He could again ambulate with "a steady gait" and appeared "in no acute distress," but did appear "in pain distress." R. 365. He was again discharged with instructions to follow-up with an orthopedic, and given pain medications. R. 371.

Yet again, Plaintiff reported to the Riverside E.R. in February 2012, complaining of a headache, nausea, vomiting, and back pain. R. 377. He again reported a pain level of 10, but that this was not the worst headache of his life. Id. Paraspinal tenderness in the lower back was observed, but Mayo appeared comfortable and "well appearing." R. 378. The physician noted that he had "been ambulating around ED and in NAD, surprised when found him checked into ED" and that he had been "sleeping comfortably in his room, when patient awakened pt. reports that he is feeling much better." R. 379.

A MRI in April 2012 of Mayo's back revealed that there was minor disk bulging at L4–L5. R. 392. Minor narrowing of the left neural foramen was also observed. Id. The MRI of his knee revealed that his "[q]uadriceps tendon, patellar tendon, cruciate ligaments, and collateral ligaments are normal in signal intensity." R. 394. However, a small, superficial articular cartilage tear was noted, as well as mild articular degeneration in the lateral compartment. Id.

Finally, the day of the ALJ hearing, physical therapist Allen R. Jones ("Jones") prepared a report based on an initial examination of Plaintiff. R. 398–402. Jones reported that Mayo suffered from a bulging lumbar disc, patella tear in his knee, depression, and anxiety. Id. He also noted medication side effects of "nausea, headaches, impaired sleep patterns, blurred vision, [and] vertigo." R. 398. Jones reported that Mayo was incapable of even low stress jobs, because of "constant pain & impaired mobility." R. 399. He opined that Mayo could only sit for ten minutes at a time, stand for only ten minutes at a time, couldn't walk a single city block without pain, would need breaks every 30 minutes, couldn't lift even ten pounds, and must keep his leg elevated above his heart thirty percent of the time. R. 400. Jones further opined that Mayo could rarely twist, stoop, and crouch; never climb ladders; and could occasionally climb stairs, slowly. R. 401.

### ii. Plaintiff's statements regarding his condition

Plaintiff submitted three Function Reports concerning his condition. Plaintiff reported that because of his condition, he could not perform his past jobs because of his inability to perform physically. R. 172, 197, 213. He reported having difficulty sleeping, and performing many basic tasks, such as yard work, cooking, grooming, and cleaning. Id. He reported getting moody and aggravated around people. R. 175, 217. Mayo also reported that he would lose focus at times. R. 217. He reported that his "knee feels like its tearing" and that his "back locks up causing headaches, swelling of knee and back, nerves jumping, spasms [and] sharp, spiking pains." R. 176. Plaintiff reported the pain is worse on a rainy, hot, or cold day. R. 219. He reported using a cane, and a brace or splint. R. 177, 202, 218. Mayo reported that he could not put any weight on his left leg because pain would shoot from the ball of his foot to his lower left back. R. 177.

7

### iii. The hearing before the ALJ

A hearing was held before an ALJ on May 7, 2012. R&R at 2. Mayo testified first. He stated that a disk in his back rolls or gets displaced, causing his pain. R. 36–37. He informed the ALJ that he was taking numerous medications for his condition, and that he started seeing Jones the week before. R. 37. He informed the ALJ that he had begun "some exercising" and was awaiting further consultation with the Virginia Medical Center for further treatment. R. 38. Mayo testified that he could lift maybe 10 pounds, could only sit for 8 to 10 minutes before changing positions, and can only stand for 8 to 10 minutes before needing to sit. Id. He further estimated that he could only walk around 100 feet before needing a break. Id. Upon examination from his counsel, Plaintiff explained that standing and sitting was difficult because "it just feels like it's cutting in my back and as well the same thing with my knee. My knee stiffens up and I feel like it's just tearing." R. 41. He testified that he keeps his leg elevated every day. R. 42. Plaintiff further reported headaches and stomach problems as side effects of his medications. R. 43. He also testified to having difficulty interacting with others as a result of his mental state, but also attributed it to his physical symptoms. R. 43–5.

VE Linda Augins also testified, opining that Plaintiff could not perform his past work as a marine electrician. R. 49. When asked what jobs were available with the limitations described by Dr. Tuwiner, Augins replied that jobs existed in the national and local economy as a recreation aide, parking lot cashier, and storage rental clerk that could support these limitations. Id. In response to questioning from Plaintiff's counsel, the VE also testified that if Plaintiff "had to miss three to five workdays per month due to back and knee" problems and had to keep his legs elevated during the workday, these positions would not be available to Mayo. Id.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

In exercising de novo review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation marks omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Thus, if the Court finds that there was substantial evidence to support the ALJ's factual findings, even if there was also evidence to support contrary findings, the ALJ's factual findings must be upheld.

## III. ANALYSIS

Mayo disagrees with the ALJ's conclusion that he is not eligible for DIB and SSI, and asks this Court to reverse or remand to the Commissioner. Doc. 14 at 6. In his Motion for

9

Summary Judgment, Mayo argues that the ALJ made three errors: first, that he failed to abide by Social Security Ruling 06-3p; second, that he failed to consider Plaintiff's side effects; and third, that he failed to consider the combined effects of Plaintiff's severe and non-severe impairments. Doc. 9 at 10.

In the R&R, the Magistrate Judge rejects Plaintiff's arguments and recommends that the ALJ's decision be affirmed. First, the Magistrate Judge found that the ALJ's decision to not assign any weight to Jones' opinion was supported by substantial evidence and was consistent with the relevant legal standards. R&R at 13-15. Second, the Magistrate Judge found that the ALJ properly considered Plaintiff's treatments and the side effects of his medication. R&R at 15-16. Finally, the Magistrate Judge found that the ALJ's residual functioning capacity ("RFC") finding was supported by substantial evidence, and that the ALJ considered the combined effects of all of Plaintiff's impairments. R&R at 16-18.

In his objection to the R&R, Plaintiff "objects to the Magistrate Judge's recommendation that the ALJ's RFC findings considered the combined effect of all of Mr. Mayo's alleged impairments, both severe and non-severe, and the RFC finding is supported by substantial medical evidence." Doc. 14 at 2. The Commissioner responds that because Plaintiff simply rehashes arguments made before the Magistrate Judge, de novo review is improper in this case, and that any failure of the ALJ to use explicit language concerning the combined effects of Plaintiff's impairments was harmless error. Doc. 15 at 2.

A. *De Novo Review is Appropriate in this Case*

The Government first contends that the Court should not grant de novo review of the R&R because Plaintiff is simply rehashing arguments rejected by the Magistrate Judge. "The Court may reject perfunctory or rehashed objections to R & R's that amount to 'a second opportunity to present the arguments already considered by the Magistrate-Judge." Felton v.

10

Colvin, No. 2:12cv558, 2014 WL 315773, at *7 (E.D. Va. Jan. 28, 2014) (quoting Gonzalez-Ramos v. Empresas Berrios, Inc., 360 F. Supp. 2d 373, 376 (D.P.R. 2005)). However, the Court may give de novo review of the R&R without the benefit of a proper objection. Gonzalez-Ramos, 360 F. Supp. 2d at 377.

In this case, the Government's contention has merit. A review of Plaintiff's Motion and Summary Judgment addressing the failure to consider the cumulative effects of Plaintiff's impairments are strikingly similar. Compare Doc. 9 at 16–19 with Doc. 14 at 3–5. However, Plaintiff does argue that "[t]he Magistrate Judge failed to address the fact that the ALJ's fragmented explanation of Plaintiff's severe and nonsevere impairments in this matter is insufficient to satisfy 20 C.F.R. § 404.1523." Doc. 14 at 6. Thus, Plaintiff does provide some specific objection to the R&R. Therefore, the Court will give these parts of the R&R de novo review.

B. *The ALJ Gave Appropriate Weight to the Combination of Plaintiff's Severe and Non-severe Impairments*

Plaintiff argues that the ALJ did not "discuss how and whether he considered the combined cumulative effect of these impairments and whether, together, the limitations rendered him disabled." Doc. 14 at 6.

When a claimant has multiple impairments, the ALJ is to

> consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523. Thus, "in evaluating the effective [sic] of various impairments upon a disability claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

After considering Plaintiff's impairments, the ALJ found that Plaintiff had an RFC to perform light work, with some exceptions. R. 17. The ALJ considered Plaintiff's testimony concerning his back and knee pain, but found that Plaintiff's reported degree of limitations were not supported by the objective medical evidence. R. 18. Considering the entire record, the ALJ noted that Plaintiff's records showed "conservative treatment for persistent complaints of back pain and complaints of left knee pain." R. 20. The ALJ further noted that the medical records showed nausea, vomiting, and headaches, "but no treating or examining physician recommended discontinuation of pain medications and the nausea and vomiting were also addressed with medication." Id. The ALJ also considered Plaintiff's alleged mental impairments, but found that they were not severe, because they created no more than mild limitations and Plaintiff showed no episodes of decompensation. R. 17.

The Magistrate Judge found that the ALJ properly considered all of Plaintiff's impairments, both severe and nonsevere. R&R at 17. Thus, while the ALJ could have been more clear, any error in failing to be clearer was harmless. Id. at 18 (citing Thornsberry v. Astrue, No. 4:08-4075, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010)).

The Court agrees with the Magistrate Judge's conclusion as stated in the R&R. Plaintiff cannot point to a single piece of evidence that the ALJ failed to consider regarding his non-severe impairments. Plaintiff's objection emphasizes form over substance. The ALJ adequately explained all of the evidence in the record, stating what he found credible and not credible, noted the lack of objective medical records concerning Plaintiff's alleged mental limitations, and

addressed the side effects of Plaintiff's prescription regimen. Thus, the ALJ properly considered all of Plaintiff's impairments in reaching his decision.

C. *The ALJ's RFC Finding was Supported by Substantial Evidence*

A review of the record shows the ALJ's decision that Plaintiff had a RFC of light work[6] is supported by substantial evidence in the record. First, although Plaintiff reported numerous times to the E.R. complaining of pain ranging between 8 to 10 on a scale of 10, the objective medical observations showed that he was in little or no distress, was only slightly uncomfortable, and could ambulate. See, e.g., R. 352–53, 365. At one point, a physician even noted his surprise that Plaintiff was being seen for any pain at all, given that he was walking around the E.R. R. 379. While describing difficulties grooming and cleaning himself, he was observed to be well-groomed. See, e.g., R. 285.

Second, throughout the process, Plaintiff's actions are not consistent with debilitating pain and were geared to seeking disability benefits. He did not see a physical therapist until one week before his ALJ hearing, and the therapist prepared his report the day of the hearing. R. 398–402. At one point, he declined an examination, asking only that his disability paperwork be completed. R. 302–3. At another point, he neglected to fill one of his pain prescriptions. R. 250.

Third, despite claiming mental impairments as a result of his disability, Plaintiff provided scant reports concerning any treatment for any depressive symptoms. His physical therapist reported Plaintiff was depressed, and Plaintiff was referred to CSB for treatment, but no records were provided showing treatment. R. 303, 401. Thus, substantial evidence exists to support the ALJ's conclusion.

---

[6] With the limitations stated in the ALJ's decision. R. 17.

13

## IV. CONCLUSION

For the reasons discussed above, the Court **OVERRULES** Plaintiff's objections, Doc. 14, and **ADOPTS**, in its entirety, the Magistrate Judge's Report and Recommendation, Doc. 13. The Court **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** Defendant's Motion for Summary Judgment, and **AFFIRMS** the Recommendation of the Magistrate Judge that the final decision of the Commissioner be upheld. Accordingly, this case is **DISMISSED WITH PREJUDICE.**

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order. If Plaintiff wishes to proceed in forma pauperis on appeal, the application to proceed in forma pauperis is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED.**

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: June 10, 2014

14